UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
MICHAEL BALBIN, MILA ALCYONE CRUZ,
ROVA LYN CRUZ, and PRUDENCIO S. DEL       :    **CLASS ACTION COMPLAINT**
MUNDO, JR., individually and on behalf of
all others similarly situated,            :    Plaintiffs Demand a Jury Trial

                          Plaintiffs,       :

                          -vs-             :

VERTICAL STAFFING CORPORATION d/b/a       :
Vertical Staffings, and DAN JEFFREY SAMONTE,
                                            :
                         Defendants.
---------------------------------------------------------------X

      Plaintiffs Michael Balbin, Mila Alcyone Cruz, Rova Lyn Cruz, and Prudencio S. Del Mundo, Jr., by their undersigned attorneys, as and for their complaint against defendants Vertical Staffing Corporation d/b/a Vertical Staffings and Dan Jeffrey Samonte, allege on behalf of themselves and all others similarly situated, as follows:

      1.     This is an action for damages, injunctive relief, declaratory relief, and other remedies for violations of the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. § 1589 *et seq.*, and for breach of contract under New York law.

      2.     Defendants are foreign labor recruiters who recruit nurses and other health care professionals from the Philippines to work for them in this District under contracts of indentured servitude. The defendants' standard employment contract contains a penalty designed to keep Filipino health care professionals working for them and their clients, including a vague damages clause that they use to convince the foreign workers that they must pay a $25,000.00 "buyout fee" in order to be freed from their employment contracts.

1

3. While the defendants characterize the $25,000.00 "buyout fee" as compensation for damages, there is no basis for this claim. The Filipino health care professionals are required to pay their own immigration, travel, and housing costs and fees, including the defendants' attorneys' fees.

4. Once the Filipino health care professionals begin working in the United States, the defendants breach their contracts and the employment laws, including by failing to pay the prevailing wages and benefits required by their contracts. To keep the foreign health care professionals from leaving, the defendants threaten them with serious harm, including threats that they will be sued for the $25,000.00 "buyout fee."

5. On behalf of themselves and all other Filipino health care professionals who have been employed by the defendants since December 2, 2012, plaintiffs seek judgment against each defendant, jointly and severally, for: compensatory and punitive damages for violations of the TVPA; compensatory damages for breach of contract; pre- and post-judgment interest at the statutory rate of 9% on all damages awarded for violations of New York laws; an injunction prohibiting the defendants from threatening to enforce or enforcing the baseless "buyout fee" claim; a declaration that the "buyout fee" is unenforceable under the TVPA, the Anti-Peonage Law, 42 U.S.C. § 1994, and New York law; an award of reasonable attorneys' fees and costs as authorized by 18 U.S.C. § 1595(a); and such other relief as the Court deems just and proper.

### Jurisdiction and Venue

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 18 U.S.C. § 1595(a) (civil trafficking). This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because the state law claims form part of the same case or controversy as the federal law claims.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to plaintiffs' claims occurred in this District.

## The Parties

8. Plaintiff MICHAEL BALBIN is a Registered Nurse licensed to practice in the State of New York and has been employed by the defendants at a facility in Queens County, New York. He is a citizen of the Republic of the Philippines and resides in Queens County, New York.

9. Plaintiff MILA ALCYONE CRUZ is a Registered Nurse licensed to practice in the State of New York and has been employed by the defendants at a facility in Queens County, New York. She is a citizen of the Republic of the Philippines and resides in Queens County, New York.

10. Plaintiff ROVA LYN CRUZ is a Registered Nurse licensed to practice in the State of New York and has been employed by the defendants at a facility in Queens County, New York. She is a citizen of the Republic of the Philippines and resides in Queens County, New York.

11. Plaintiff PRUDENCIO S. DEL MUNDO, JR. is a Registered Nurse licensed to practice in the State of New York and has been employed by the defendants at a facility in Queens County, New York. He is a citizen of the Republic of the Philippines and resides in Queens County, New York.

12. Defendant VERTICAL STAFFING CORPORATION d/b/a Vertical Staffings ("Vertical Staffing") is a corporation organized under the laws of the State of New York with a place of business at 333 East 34th Street, Suite 1E, New York, New York 10016.

13. Defendant DAN JEFFREY SAMONTE ("Samonte") is the owner and President of defendant Vertical Staffing. Upon information and belief, he is a resident of Westchester County, New York.

14. Defendant Samonte exercised complete domination and control of defendant Vertical Staffing with respect to the conduct alleged in this complaint, including violations of the TVPA designed to coerce the continued provision of labor and services by plaintiffs and other Filipino health care professionals.

15. Defendant Samonte used his complete domination and control of defendant Vertical Staffing to commit wrongs against plaintiffs and other Filipino health care professionals, including violations of the TVPA.

16. Defendants Vertical Staffing and Samonte are associated in fact and comprise a venture as that term is used in the TVPA, 18 U.S.C. §§ 1589 and 1595.

**Facts Common to All Claims**

17. For more than eight years, defendants Vertical Staffing and Samonte have recruited Filipino health care professionals to work for their staffing agency and its client facilities in New York. Throughout this time, the defendants have required Filipino health care professionals to execute a standard employment contract (the "Contract").

18. The Contract states that the defendants "shall take all reasonable steps to ensure the Employee obtains the relevant authorizations and meets the requirements necessary to legally commence work in the United States and to maintain Employee's legal status to work in the United States for the duration of the term."

19. The Contract states that the employee must work exclusively for the defendants.

20. The Contract states that it is for a term of three years.

4

21. The Contract states that the employee must complete 6,000 hours of work during the three-year term.

22. The Contract states that the employee will work 40 hours per week.

23. The Contract states that the employee will be paid an "annual salary" equal to or exceeding the prevailing wage for a Registered Nurse ("RN") as calculated by the U.S. Department of Labor.

24. Plaintiffs Michael Balbin, Mila Alcyone Cruz, Rova Lyn Cruz, and Prudencio S. Del Mundo, Jr. each signed a copy of the defendants' standard employment contract. Each Contract was counter-signed by defendant Samonte.

25. Defendants breached each Contract by failing to take all reasonable steps to ensure that the plaintiffs obtained the relevant authorizations to work in the United States. Instead, the defendants required that plaintiffs each pay the costs of obtaining the relevant authorizations, including the legal fees required to perform the defendants' contractual obligations.

26. Defendants breached each Contract by requiring that plaintiffs Michael Balbin, Mila Alcyone Cruz, Rova Lyn Cruz, and Prudencio S. Del Mundo, Jr. each pay $500.00 to defendant Samonte, personally, to cover some of the costs that the defendants were required to pay under the Contracts.

27. Defendants breached each Contract and violated state and federal labor laws by deducting thousands of dollars for the defendants' legal fees from the paychecks of plaintiffs Michael Balbin, Mila Alcyone Cruz, Rova Lyn Cruz, and Prudencio S. Del Mundo, Jr.

28. Plaintiffs Michael Balbin, Mila Alcyone Cruz, Rova Lyn Cruz, and Prudencio S. Del Mundo, Jr. were not paid an annual salary.

29. Plaintiffs Michael Balbin, Mila Alcyone Cruz, Rova Lyn Cruz, and Prudencio S. Del Mundo, Jr. were not paid the prevailing wage for all the hours they worked.

30. Plaintiff Michael Balbin spoke to the defendants about their failure to comply with the Contract and his intent to end their employment relationship. Defendant Samonte responded by telling Mr. Balbin that he had to pay a "buyout fee" of $25,000.

31. Plaintiff Mila Alcyone Cruz spoke to the defendants about their failure to comply with the Contract and her intent to end the employment relationship. Defendant Samonte responded to Ms. Cruz that she had to pay a "buyout fee" of $25,000.

32. Ms. Rova Lyn Cruz spoke to the defendants about their failure to comply with the Contract and her intent to end the employment relationship. Defendant Samonte responded to Ms. Cruz that she had to pay a "buyout fee" of $25,000.

33. Plaintiff Prudencio S. Del Mundo, Jr. wants to end his employment relationship with the defendants, but has not done so because he has heard from other Filipino health care professionals that they were required to pay a $25,000.00 "buyout fee" in order to stop working for the defendants.

34. Defendant Samonte's demand for a $25,000.00 "buyout fee" has deterred plaintiffs Michael Balbin, Mila Alcyone Cruz, Rova Lyn Cruz, and Prudencio S. Del Mundo, Jr. from ending their employment relationship with the defendants. As a result, the defendants have continued to profit from the labor and services that the plaintiffs have felt compelled to perform.

35. The $25,000.00 "buyout fee" is designed to coerce Filipino health care professionals into continuing their employment with the defendants.

36. The amount of the $25,000.00 "buyout fee" is disproportionate to the actual costs incurred by the defendants.

37. The $25,000.00 "buyout fee" is disproportionate to the compensation paid to Filipino health care professionals.

38. The purpose of the $25,000.00 "buyout fee" is not to compensate defendants for actual or potential damages.

39. The purpose of the $25,000.00 "buyout fee" is to provide and obtain the labor and services of Filipino health care professionals for the benefit of defendants.

40. The purpose of the $25,000.00 "buyout fee" is to deter Filipino health care professionals from leaving their employment with defendants.

41. Plaintiffs reasonably fear that defendants will sue them for the $25,000.00 "buyout fee."

42. Plaintiffs reasonably fear that the defendants will take other actions that may jeopardize plaintiffs' immigration status and future plans to apply for U.S. citizenship.

43. As a direct and proximate result of the defendants' threats, plaintiffs and other Filipino health care professionals have continued working for the defendants for less compensation and fewer benefits than required by their employment contracts and the labor and employment laws.

## Class Action Claims

44. Defendants' conduct described above was part of and resulted from policies and practices that the defendants applied to all Filipino health care workers they recruited and employed. Plaintiffs therefore bring the claims alleged herein as a class action pursuant to Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

45. The class is comprised of all Filipino health care professionals who worked for the defendants at any time since December 2, 2012.

46. The claims of the class are properly brought as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure because the defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

47. The claims of the class are properly brought as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure for the following reasons:

   a. Numerosity: The potential members of the class are so numerous that joinder of all members of the class is impracticable.

   b. Commonality: There are questions of law and fact common to plaintiffs and the class that predominate over any questions affecting only individual members of the class. These common questions of law and fact include:

   1. whether the "buyout fee" is unenforceable under the Anti-Peonage Law, 42 U.S.C. § 1994;

   2. whether the "buyout fee" is an unenforceable penalty under New York law;

   3. whether the "buyout fee" constitutes a threat of "serious harm" within the meaning of the TVPA;

   4. whether defendants engaged in a policy and practice of failing to pay Filipino health care professionals the agreed upon wages;

   5. whether defendants engaged in a policy and practice of using an unenforceable "buyout fee" to coerce Filipino health care professionals to continue working for them;

   6. whether defendants are liable to the class;

   7. whether the class can be made whole by the payment of damages; and

   8. whether defendant Samonte is personally liable for damages sustained by class members.

   c. Typicality:  Plaintiffs' claims are typical of the claims of the class.  Plaintiffs and all members of the class sustained injuries and damages arising out of and proximately caused by the defendants' policies and practices described above.

   d. Adequacy of Representation:  Plaintiffs will fairly and adequately represent the interest of class members.  Plaintiffs' attorneys are competent and experienced in litigating complex employment class actions, including class actions alleging violations of the TVPA.

48. Superiority:  A class action is superior to other available means for fair and efficient adjudication of this controversy.  Each class member has been damaged and is entitled to recovery because of defendants' illegal policies and practices.  Individual joinder of all class members is not practicable, and questions of law and fact common to the class predominate over any questions affecting only individual members of the class.  Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

**FIRST CLAIM FOR RELIEF**
**AGAINST ALL DEFENDANTS FOR VIOLATIONS OF THE**
**TRAFFICKING VICTIMS PROTECTION ACT (TVPA)**
**18 U.S.C. § 1595**

49. Plaintiffs repeat and reallege each and every allegation set forth above as if fully restated herein.

50. The Trafficking Victims Protection Act ("TVPA") imposes liability on anyone who knowingly provides or obtains the labor or services of a person by means of threats of

serious harm, the abuse or threatened abuse of law or legal process, or by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm.

51. The TVPA defines "serious harm" as any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

52. Contract termination or "buyout" fees between $15,000 and $25,000 have been found to constitute a threat of serious harm as defined in the TVPA.

53. Defendants knowingly provided and obtained the labor and services of plaintiffs by means of serious harm and threats of serious harm, including without limitation psychological, financial, or reputational harm that was sufficiently serious to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

54. Defendants knowingly provided and obtained the labor and services of plaintiffs by means of a scheme, plan, or pattern intended to cause plaintiffs to believe that, if they did not perform such labor or services, they would suffer serious harm, including without limitation psychological, financial, or reputational harm that was sufficiently serious to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

55. The TVPA defines an "abuse or threatened abuse of law or legal process" as the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any

manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.

56. Defendants knowingly provided and obtained the labor and services of plaintiffs by means of the abuse or threatened abuse of law or legal process, including without limitation the use or threatened use of a law or legal process in order to exert pressure on plaintiffs to continue working for the defendants and to refrain from seeking employment elsewhere.

57. Defendants knowingly benefitted, financially or by receiving other value, from participation in a venture which has engaged in the providing or obtaining of labor or services by the means described above, knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by such means.

58. Defendants knowingly recruited, transported, provided, and obtained plaintiffs for labor or services in violation of 18 U.S.C. §§ 1589, 1590, 1594(a), and 1594(b).

59. By reason of the conduct described above, defendants were perpetrators of violations of 18 U.S.C. §§ 1589, 1590, 1594(a), and 1594(b).

60. Plaintiffs suffered damages as a direct and proximate result of defendants' conduct.

61. Plaintiffs are entitled to compensatory and punitive damages in amounts to be determined at trial, together with reasonable attorneys' fees and the costs of this action.

## SECOND CLAIM FOR RELIEF
## AGAINST ALL DEFENDANTS FOR CONSPIRING TO VIOLATE
## THE TRAFFICKING VICTIMS PROTECTION ACT (TVPA)
## 18 U.S.C. § 1594(b)

62. Plaintiffs repeat and reallege each and every allegation set forth above as if fully restated herein.

63. Defendants Vertical Staffing and Samonte conspired with one another to violate 18 U.S.C. §§ 1589 and 1590.

64. Defendants Vertical Staffing and Samonte agreed to provide and obtain the labor and services of plaintiffs by means of the abuse or threatened abuse of law or legal process, including without limitation the use or threatened use of a law or legal process in order to exert pressure on plaintiffs to continue working for the defendants or to refrain from seeking employment elsewhere.

65. Defendants Vertical Staffing and Samonte agreed to provide and obtain the labor and services of plaintiffs by means of serious harm and threats of serious harm to plaintiffs, including without limitation psychological, financial, or reputational harm that was sufficiently serious to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

66. Defendants Vertical Staffing and Samonte agreed to provide and obtain the labor and services of plaintiffs by means of a scheme, plan, or pattern intended to cause plaintiffs to believe that, if they did not perform such labor or services, they would suffer serious harm, including without limitation psychological, financial, or reputational harm that was sufficiently serious to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

67. Defendants Vertical Staffing and Samonte agreed to benefit, financially or by receiving other value, from participation in a venture which has engaged in the providing or obtaining of labor or services by the means described above, knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by such means.

68. Defendants Vertical Staffing and Samonte agreed to recruit, transport, provide, and obtain plaintiffs for labor or services in violation of 18 U.S.C. §§ 1589 and 1590.

69. Each of the defendants engaged in at least one overt act in furtherance of the conspiracy, including:

   a. Defendant Vertical Staffing required plaintiffs to execute a contract with a contract termination provision used for the purpose of coercing them to continue working;

   b. Defendant Samonte demanded payment of the $25,000.00 "buyout fee" from plaintiffs and warned that they could not stop working for the defendants without payment of that fee.

70. Each of the defendants intentionally engaged in these acts and additional acts in furtherance of their agreed plan to deny plaintiffs the compensation they were entitled to under the Contracts and to coerce plaintiffs to continue working for the defendants and not to seek work elsewhere.

71. Plaintiffs suffered damages as a direct and proximate result of defendants' conspiracy.

72. Plaintiffs are entitled to compensatory and punitive damages in amounts to be determined at trial, together with reasonable attorneys' fees and the costs of this action.

### THIRD CLAIM FOR RELIEF
### AGAINST ALL DEFENDANTS FOR ATTEMPTING TO VIOLATE
### THE TRAFFICKING VICTIMS PROTECTION ACT (TVPA)
### 18 U.S.C. § 1594(a)

73. Plaintiffs repeat and reallege each and every allegation set forth above as if fully restated herein.

74. Defendants attempted to violate 18 U.S.C. §§ 1589 and 1590.

75. Plaintiffs suffered damages as a direct and proximate result of defendants' attempts to violate 18 U.S.C. §§ 1589 and 1590.

76. Plaintiffs are entitled to compensatory and punitive damages in amounts to be determined at trial, together with reasonable attorneys' fees and the costs of this action.

## FOURTH CLAIM FOR RELIEF
## AGAINST ALL DEFENDANTS
## FOR BREACH OF CONTRACT

77. Plaintiffs repeat and reallege each and every allegation set forth above as if fully restated herein.

78. Plaintiffs entered into valid and binding employment Contracts with defendants.

79. Plaintiffs substantially performed under the Contracts.

80. Defendants breached the Contracts by failing to pay plaintiffs the required compensation.

81. Defendants breached the Contracts by failing to take all reasonable steps to ensure that plaintiffs obtained the relevant authorizations necessary to legally commence work in the United States and to maintain their legal status to work in the United States for the duration of the term.

82. Plaintiffs suffered damages as a direct and proximate result of defendants' breaches.

83. Plaintiffs are entitled to compensatory damages for breach of contract in amounts to be determined at trial.

## FIFTH CLAIM FOR RELIEF
## AGAINST ALL DEFENDANTS
## FOR A DECLARATORY JUDGMENT

84.	Plaintiffs repeat and reallege each and every allegation set forth above as if fully restated herein.

85.	The "buyout fee" is unenforceable under the TVPA.

86.	The "buyout fee" is unenforceable under the Anti-Peonage Law, 42 U.S.C. § 1994.

87.	The "buyout fee" is unenforceable under New York law.

88.	Plaintiffs have a definite and concrete dispute with defendants concerning the enforceability of the "buyout fee."

89.	The dispute touches the legal relations of parties having adverse legal interests.

90.	The dispute is real and substantial.

91.	The dispute admits of specific relief through a decree of a conclusive character.

92.	The dispute involves a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

## Jury Demand

93.	Plaintiffs are entitled to and demand a jury trial.

## Prayer for Relief

**WHEREFORE** plaintiffs Michael Balbin, Prudencio S. Del Mundo, Jr., Mila Alcyone Cruz, and Rova Lyn Cruz request judgment against each defendant, jointly and severally, awarding plaintiffs and all others similarly situated: compensatory and punitive damages for violations of the TVPA; compensatory damages for breach of contract; pre- and post-judgment interest at the statutory rate of 9% on all damages awarded for violations of New York laws; an

injunction prohibiting the defendants from threatening to enforce or enforcing the baseless "buyout fee" claim; a declaration that the "buyout fee" is unenforceable under the TVPA, the Anti-Peonage Law, 42 U.S.C. § 1994, and New York law; an award of reasonable attorneys' fees and costs as authorized by 18 U.S.C. § 1595(a); and such other relief as the Court deems just and proper.

Dated: New York, New York
December 2, 2022

THE HOWLEY LAW FIRM P.C.

By: */s John J.P. Howley*
    John J.P. Howley
*Attorneys for Plaintiffs*
1345 Avenue of the Americas, 2nd Floor
New York, New York  10105
(212) 601-2728